**CITY OF ST. LOUIS, a Municipal Corporation, the Board of Police Commissioners of the City of St. Louis and Harry A. Underberg, Appellants,**

v.

**Milton CARPENTER, Director of Revenue of the State of Missouri, Respondent.**

No. 48225.

Supreme Court of Missouri,

Division No. 2.

Jan. 9, 1961.

Thomas J. Neenan, City Counselor, John J. Shanahan, Associate City Counselor, St. Louis, for appellants.

John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

This is a declaratory judgment action in which the plaintiffs seek an adjudication that The Motor Vehicle Safety Responsibility Law, Chapter 303, RSMo Supp 1957, V.A.M.S., does not apply to employees of the City of St. Louis, a municipal corporation, or to employees of the Board of Police Commissioners of the City of St. Louis, when such employees, in the discharge of their official duties, are operating motor vehicles owned by the City or the Police Department which are involved in accidents. More specifically, the plaintiffs contend that § 303.350 exempts the employees as well as the municipality and, therefore, the defendant director of revenue is without lawful authority to suspend the operators' licenses of such employees for non-compliance with the security provisions of the Chapter. The case was submitted on the pleadings to the court without a jury. From a finding by the trial court that plaintiffs' employees were subject to all of the provisions of Chapter 303, the plaintiffs have appealed.

Under the Responsibility Law the operator of a motor vehicle involved in an accident in which a person is killed or injured, or property is damaged in excess of $100, is required to report the matter to the director of revenue; if the operator is physically incapable of making such report, then the owner of the vehicle involved must make the report within ten days after learning of the accident. Section 303.040. If, after the report is made, proof of ability to respond in damages is not furnished in the time and the manner provided, the defendant, as director of revenue of the State of Missouri, is required to "suspend the license of each operator, and all registrations of each owner of a motor vehicle, in any manner involved in such accident". Section 303.030. Proof of financial responsibility may be required "with respect to a motor vehicle or with respect to a person who is not the owner of a motor vehicle". Section 303.160.

The section upon which the plaintiffs depend for exemption and which we are called on to construe is § 303.350 which reads as follows:

"Notwithstanding anything else herein contained, this chapter shall not apply *with respect to any motor vehicle owned by* the United States, the state of Missouri, or any political subdivision of this state, or *any*

*municipality* therein, * * *." Italics added.

In support of their contention that it is the intent of § 303.350 to make the Responsibility Law inapplicable to municipal officials and employees, the plaintiffs cite City of St. Paul v. Hoffmann, 223 Minn. 76, 25 N.W.2d 661, and City of Phoenix v. Lane, 76 Ariz. 240, 263 P.2d 302. These cases hold that the employee drivers of municipally owned motor vehicles, as well as the municipality, are exempted from compliance with the financial responsibility laws of Minnesota and Arizona. The cases are not particularly helpful because of differences in the statutes under consideration. For example, the Minnesota law does not provide for a suspension of the registration of the motor vehicle involved, but only the license of the operator or driver of the motor vehicle, §§ 170.21 and 170.25, Minnesota Statutes Annotated. Also § 170.51, the exclusion provision, specifies "any motor vehicle owned *and operated*" by the municipality. Italics added. Section 303.350 of the Missouri Law does not in express terms mention the operation or operator of the motor vehicle. Moreover, under § 170.54 of the Minnesota Act, the driver is deemed to be the agent of the owner; and this provision has been held to establish a prima facie case that the motor vehicle was being operated with the express or implied consent of the owner thus broadening the operative field of the doctrine of respondeat superior. Carey v. Broadway Motors, Inc., 253 Minn. 333, 91 N.W.2d 753; Aasen v. Aasen, 228 Minn. 1, 36 N.W.2d 27; Clemens v. United States, D.C., 88 F.Supp. 971. The Missouri Law does not purport to enlarge the liability of the owner or the operator of the motor vehicle.

While the Arizona law operates both upon the operator's license and the registration of the motor vehicle, it contains a provision that the law does not apply to a driver operating a motor vehicle owned by his employer; in such case the owner of the motor vehicle is subject to the provisions of the law, but the driver is not. Section 28–1143, subd. A, par. 5, Arizona Revised Statutes Annotated. The Lane decision is based at least partially on this ground; and the provision, which is not in the Missouri Law, also appears to have influenced the court's construction of the exemption section. The Hoffmann and the Lane cases are not persuasive that we should adopt a similar construction of the exemption provision of the Missouri Law.

■ Statutes enacted for the protection of life and property, or which introduce some new regulation conducive to the public good, are considered remedial in nature and are generally given a liberal construction. 82 C.J.S. Statutes § 388, p. 918; 50 Am.Jur., Statutes, § 395, p. 420; Barbieri v. Morris, Mo., 315 S.W.2d 711, 714; State ex rel. Whatley v. Mueller, Mo.App., 288 S.W.2d 405, 409 [2, 3].

■ The purpose of The Motor Vehicle Safety Responsibility Law is to protect the public from injury or damage by the operation of motor vehicles upon the public highways and to that extent it is remedial. New York Casualty Company v. Lewellen, 8 Cir., 184 F.2d 891, 894 [3]. The Law necessarily provides for sanctions as a means of its enforcement.

■■ Where a statute is both remedial and penal, remedial in one part while penal in another, it should be considered a remedial statute when enforcement of the remedy is sought and penal when enforcement of the penalty is sought. State ex rel. Terminal R. R. Ass'n of St. Louis v. Hughes, 350 Mo. 869, 169 S.W.2d 328, 330 [4, 5]. The part of Chapter 303 with which we are concerned deals with the coverage of the Law and exemptions therefrom; in that respect it is remedial and should be liberally construed in order to accomplish the greatest public good. New York Casualty Co. v. Lewellen, supra.

■■ Statutes relating to the same or similar subject matter, even though en-

acted at different times and found in different chapters, are in pari materia and must be considered together when such statutes shed light on the statute being construed. State ex rel. Smithco Transport Co. v. Public Service Commission, Mo., 316 S.W.2d 6, 12 [6]; State ex rel. Wright v. Carter, Mo., 319 S.W.2d 596, 600 [7]; State ex rel. Spink v. Kemp, 365 Mo. 368, 283 S.W.2d 502, 526 [38]. In this case The Motor Vehicle Safety Responsibility Law should be construed in the light of other statutes relating to motor vehicles such as the provisions for the registration and licensing of motor vehicles, Chapter 301, and the provisions for licensing operators of motor vehicles, Chapter 302.

Municipalities are exempt from the general provisions for registration of motor vehicles and the display of number plates, although they are required to display the name of the municipality and a distinguishing number on each of their vehicles. Section 301.260, RSMo 1949, V.A.M.S. Since registration certificates and number plates in the usual sense are not required for municipally owned vehicles, the plaintiffs contend "the Director of Revenue would be powerless to suspend that which does not exist" and, if § 303.350 is to be given meaning, it must be construed to apply to the operator's license since there is no other license against which the director could act. But the exemption of § 303.350 is from all of the provisions of Chapter 303 relating to owners of motor vehicles and the chapter requires more of owners than the surrender of registrations and number plates. Among the duties and obligations imposed upon owners are the making of reports of accidents under certain circumstances and the furnishing of proof of financial responsibility. We cannot say that Chapter 303 would have no application to municipalities simply because they are not amenable to the usual, and perhaps most effective, means for enforcing compliance. Municipalities and other political subdivisions of the state perform many duties imposed by law although sanctions are not specifically provided for their failure to do so.

■ The Drivers' License Law, Chapter 302, RSMo 1949, V.A.M.S., is applicable to state officers and employees as well as other persons. Department of Penal Institutions v. Wymore, 350 Mo. 127, 165 S.W.2d 618, 620 [3]. The soundness of the Wymore decision has never been questioned and the plaintiffs do not do so now. The case was decided in 1942 and the Drivers' License Law was amended in 1943 to provide certain exemptions, Laws 1943, p. 662, § 302.080, RSMo 1949, V.A.M.S. But neither there nor elsewhere are officers or employees of municipalities specifically exempted from compliance with the provisions of the Drivers' License Law.

■ We are concerned in this case with the causes for which such licenses can be suspended. The plaintiffs do not contend that the operators' licenses of state and municipal employees cannot be revoked or suspended for the eleven causes provided by § 302.271 and subdivision 1 of § 302.281, RSMo Supp 1957, V.A.M.S. If the municipal employee is not exempt from suspension or revocation on the grounds specified in these two sections, there appears to be no good reason why he should not be subject to the Responsibility Law. It would seem rather incongruous that a municipal employee's operators license could be revoked for leaving the scene of an accident, § 302.271(4), or suspended for causing personal injury or property damage by his careless and reckless operation of the motor vehicle, § 302.281, subd. 1, but in those same situations he could not be required to furnish proof of his ability to pay for the damage he had caused on the theory that to do so would impair the proper functioning of the municipality. As stated in Wymore, 165 S.W.2d loc. cit. 620: "There is just as much danger to the public in the operation of a state owned car as one which is privately owned."

**790**

Furthermore, the Drivers' License Law has two direct references to the Responsibility Law. Section 302.060(8) provides, among other things, that the director of revenue shall not issue a license: "To any person who has an unsatisfied judgment against him, as defined in chapter 303, RSMo 1949, until such judgment has been satisfied or the financial responsibility of such person, as defined in section 303.120, RSMo 1949, has been established." Subdivision 2 of § 302.281 provides that: "The director shall suspend the license of any operator or chauffeur upon a showing by the records of the director or any public records that such operator or chauffeur has an unsatisfied judgment against him, as defined in chapter 303, RSMo, until such judgment has been satisfied or the financial responsibility of such person, as defined in section 303.120, RSMo, has been established." Section 303.120, RSMo 1949, defining financial responsibility, was repealed, Laws 1953, p. 570, § 1, but was re-enacted with no change in substance as subdivision (10) of § 303.020, RSMo Supp 1957, V.A.M.S. These instances illustrate the intended relation and interdependency of the various laws relating to the ownership and operation of motor vehicles.

Section 302.051 of the Drivers' License Law, as amended Laws 1955, p. 617, provides: "Any person holding a valid operator's license shall not be required to procure a chauffer's license for the operation for official use of any motor vehicle owned * * * by any municipality * * * of this state * * *." This section makes clear the legislative intent that municipal employees operating motor vehicles in the course of their employment be licensed either as an operator or a chauffeur. See also § 302.020, RSMo 1949, as amended, V.A.M.S.

If the general assembly had intended to make Chapter 303 inapplicable to municipal employees operating motor vehicles owned by the municipality, it could have done so clearly and unmistakably as it has done in other similar instances. Under

none of the applicable rules of construction are we justified in reading into § 303.350 the exemption for which the plaintiffs contend. The judgment is affirmed.

All concur.